

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| RANDALL TETZNER, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD76875 |
| | ) | |
| | ) | OPINION FILED: |
| STATE OF MISSOURI, DEPARTMENT | ) | June 17, 2014 |
| OF SOCIAL SERVICES, FAMILY | ) | |
| SUPPORT DIVISION, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Patrick W. Campbell, Judge**

**Before Division III:** Thomas H. Newton, Presiding Judge, and
Mark D. Pfeiffer and Cynthia L. Martin, Judges

This case illustrates the interface among Missouri's statutory framework with regard to

child support collection rights acquired by the relevant state agency acting on behalf of the State

of Missouri.

Randall Tetzner ("Father") petitioned the Circuit Court of Jackson County, Missouri

("Circuit Court"), for judicial review of the Missouri Department of Social Services, Family

Support Division's ("the Division") August 7, 2007 order to withhold ("withholding order"), and

from the Division Director's Decision affirming that withholding order. The Circuit Court

reversed the Division Director's Decision and vacated the withholding order. The Division timely appeals.[1]

On appeal, we review the administrative agency's decision rather than the judgment of the circuit court; however, we affirm or reverse the circuit court's judgment based upon our review of the administrative decision. *Schumer v. Lee*, 404 S.W.3d 443, 445 (Mo. App. W.D. 2013). We reverse the judgment of the Circuit Court and order that the Division Director's Decision and the corresponding withholding order be reinstated.

## **Facts and Procedural History**[2]

The Circuit Court entered a decree dissolving the marriage of Father and Cynthia Tetzner ("Mother") on March 5, 1984 ("Dissolution Decree"). Mother was awarded custody of the parties' child born March 27, 1982; Father was ordered to pay $150 per month child support to Mother. Without obtaining a modification of legal custody, Mother relinquished physical custody of the child to Dorothy Tetzner, the child's paternal grandmother ("Grandmother"). Grandmother raised the child and drew AFDC (Aid to Families with Dependent Children) financial assistance from the State of Missouri.

On or about October 9, 1996, the Division sent a Notification to Circuit Clerk ("Notification"). The Notification identified Father as an "absent parent," the child as being raised by a "NCPR [Non-Parent Caretaker Relative]," and state financial assistance in the form of AFDC benefits. The Notification directed the Circuit Clerk to send child support payments to the Division.

---

[1] Father, as the party aggrieved by the agency decision, is the Rule 84.05(e) appellant.
[2] In reviewing an administrative agency's decision, we look to the whole record, not merely at that evidence that supports the agency's decision, and we no longer view the evidence in the light most favorable to the agency's decision. *Lagud v. Kansas City Bd. of Police Comm'rs*, 136 S.W.3d 786, 791 (Mo. banc 2004).

On June 4, 1997, the Division issued an Administrative Order on an Existing Order ("administrative order"). The administrative order indicated that as of May 30, 1997, Father owed $8440.21 in child support arrearages. On August 7, 2007, the Division issued a withholding order to Father's employer to enforce the administrative order, with Grandmother as obligee. Father requested an administrative hearing, which was held on July 2, 2009. Thereafter, on August 11, 2009, the Division's Director issued a Decision affirming the withholding order.

Father filed a petition for review of administrative decision in the Circuit Court on September 22, 2009. The Circuit Court issued its judgment on June 19, 2013, reversing the Division Director's Decision and vacating the withholding order. The Division appeals.

**Standard of Review**

In an appeal following judicial review of an agency's administrative action, this court reviews the decision of the agency, not the circuit court. *Lajeunesse v. State, Dep't of Soc. Servs., Dir., Family Support Div.*, 350 S.W.3d 842, 844 (Mo. App. W.D. 2011). Our scope of review is limited to whether the agency's decision:

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

§ 536.140.2.[3]   While we defer to the agency's findings of fact, we review the agency's interpretation, application, or conclusions of law *de novo*.  *Lajeunesse*, 350 S.W.3d at 844 (citing § 536.140.3).  Statutory interpretation is a question of law that we review *de novo*.  *Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 686 (Mo. banc 2010).

## Analysis

Father raises four points on appeal challenging the Division's authority to issue the withholding order.  Father challenges:  (1) The Division's jurisdiction to issue the withholding order; (2) the Division's lack of authority to enforce child support rights where Grandmother never acquired such rights; (3) the Division's lack of authority to assert rights it purportedly acquired via an alleged assignment of rights from Grandmother; and (4) the Division's lack of authority to enforce child support rights barred by application of section 516.350.2.

## I.

In his first point on appeal, Father argues that the Division erred in issuing the August 7, 2007 withholding order because it was without subject matter jurisdiction to do so.

"As a basic tenet of administrative law, an administrative agency has only such jurisdiction as may be granted by the legislature."  *St. Charles Cnty. Ambulance Dist., Inc. v. Mo. Dep't of Health & Senior Servs.*, 248 S.W.3d 52, 54 (Mo. App. W.D. 2008) (internal quotation omitted).  "If the agency lacks statutory authority to consider a matter, it is without subject matter jurisdiction."  *Id.*

The Division had subject matter jurisdiction over this matter because the legislature has granted it statutory authority to enforce court orders of support.  Section 454.505.1 provides that "if a support order has been entered, the director shall issue an order directing any employer or

---

[3] All statutory references are to the Revised Statutes of Missouri 2000, as updated through the 2013 Cumulative Supplement.

other payor of the parent to withhold and pay over to the division . . . money due." The child support obligor's income is subject to such withholding on the date the obligor becomes one month delinquent in child support payments. § 454.505.1.

At the administrative hearing to contest the withholding order, "the certified copy of the court order and the sworn or certified statement of arrearages shall constitute prima facie evidence that the director's order is valid and enforceable." § 454.505.3. At the administrative hearing in this case, the hearing officer admitted into evidence the Division's hearing packet, which included the Dissolution Decree that ordered Father to pay $150 per month in child support, the Division's child support arrearage calculation summary, and Circuit Court payment records showing that Father paid $335.94 on March 17, 1999. Thus, the Division established its prima facie case.

"If a prima facie case is established, the obligor may only assert mistake of fact as a defense." *Id.* A "mistake of fact" is defined as "an error in the amount of the withholding or an error as to the identity of the obligor." *Id.* As obligor, Father had the burden of proof on these issues. *Id.* Father did not present any factual evidence on these issues at the administrative hearing. Thus, Father did not rebut the Division's prima facie case.

Father contends that the Division did not have jurisdiction because an existing court order setting a determinable amount of child support precludes the Division from establishing new support orders pursuant to section 454.470. The Division did not, however, issue an administrative order *establishing* child support or entering a "new" support order. Instead, the Division's order merely enforced the *existing* court order, as the Division is statutorily authorized and directed to do pursuant to section 454.505.1.[4]

---

[4] Father, currently a resident of Iowa, also cites to the Uniform Interstate Family Support Act ("UIFSA"), which Missouri has adopted and codified in sections 454.850 to 454.997. The UIFSA does not aid Father's

Point I is denied.

## II. and III.

The issues in Father's second and third points are whether Grandmother properly acquired rights to be enforced by the Division and, if not, whether any purported assignment of rights by Grandmother to the Division was a legal nullity. Father asserts that the Division acted without authority in bringing an action in the name of the Grandmother because the Circuit Court did not enter an order directing a change in the payee from Mother to Grandmother and the Division had not acquired child support rights via valid assignment.

The Circuit Court agreed with Father, explaining its judgment as follows:

[Grandmother] is a caretaker relative that raised [the child]. Apparently, the custodial parent in the original divorce judgment, [Mother], relinquished custody to [Grandmother]. There is no evidence in the record to suggest this custodial transfer was done by Court order. Pursuant to R.S.Mo. § 454.455.3, "If an order for child support has been entered, *no assignment of support has been made*, and the legal custodian and obligee under the order relinquishes physical custody of the child to a caretaker relative without obtaining a modification of legal custody . . . the division may, thirty days after the transfer of custody and upon notice to the obligor and obligee, direct the obligor or other payor to change the payee to the caretaker relative or appropriate state agency." The statute's use of the term "direct" contemplates [an] order as the next sentence states, "An order changing the payee to a caretaker relative shall terminate when the caretaker relative no longer has physical custody of the child . . ." In the present case, no order was entered by the agency directing a change in payee from [Mother] to [Grandmother].

. . .

The issue is not whether the Division had authority, the issue is whether the designated obligee, [Grandmother], ever properly acquired rights to be enforced by the Division. The Court finds that pursuant to § 454.455.3 she never properly

argument. By issuing the original child support order in the 1984 Dissolution Decree, Missouri established continuing, exclusive subject matter jurisdiction over the order. *State ex rel. Brantingham v. Grate*, 205 S.W.3d 317, 320 (Mo. App. W.D. 2006). Missouri would lose its subject matter jurisdiction over the support order only if certain criteria in section 454.867(a)(1) were met. *Id.* Father has not alleged, and there is no evidence in the record, that any such statutory criteria have been met. Thus, there is nothing in the UIFSA preventing the Division from enforcing the Missouri support order; instead, the UIFSA expressly authorizes the withholding order in question. § 454.932.

acquired the rights of [Mother] to receive support as caretaker relative because there was no order changing the payee.

(Emphasis added.) Were this a situation in which Grandmother had never applied for and received AFDC benefits from the State of Missouri, the Circuit Court's reliance upon section 454.455.3 would be well taken. However, where, as here, the caretaker relative *has* applied for and received AFDC benefits, section 454.455.1 provides the applicable statutory link for the caretaker relative to acquire child support rights that are deemed to have been assigned to the Division by operation of law, § 208.040.2(2). In other words, the Circuit Court improperly concluded that "no assignment of support has been made," which led to its improper reliance upon section 454.455.3, instead of section 454.455.1.

Section 454.455.1 presupposes *both* the relinquishment of physical custody by the child support obligee to a non-parent caretaker relative *and* an assignment of support rights to the Division by the caretaker relative in order to receive state assistance. Section 454.455.1 provides, in pertinent part:

> In any case wherein an order for child support has been entered and the legal custodian and obligee pursuant to the order relinquishes physical custody of the child to a caretaker relative without obtaining a modification of legal custody, *and the caretaker relative makes an assignment of support rights to the division of family services in order to receive aid to families with dependent children benefits, the relinquishment and the assignment, by operation of law, shall transfer the child support obligation pursuant to the order to the division in behalf of the state*.

(Emphasis added.) Here, the undisputed facts reflect that *both* a relinquishment of custody *and* an assignment of child support rights have occurred:

- Mother, as the legal custodian and child support obligee pursuant to the Dissolution Decree, relinquished physical custody of the child to Grandmother without obtaining a modification of legal custody;

7

- Grandmother is a caretaker relative. § 208.040.1(2);

- Grandmother applied for and received AFDC benefits from the State of Missouri;

- Grandmother's application for AFDC constituted an assignment of support rights from Mother to Grandmother to the Division, by operation of law.

> [E]ach applicant for or recipient of assistance: . . . [s]hall assign to the family support division in behalf of the state any rights to support from any other person such applicant may have in the applicant's own behalf or in behalf of any other person for whom the applicant is applying for or receiving assistance. An application for benefits made under this section shall constitute an assignment of support rights which shall take effect, *by operation of law*, upon a determination that the applicant is eligible for assistance under this section.

§ 208.040.2(2) (emphasis added).

Thus, pursuant to section 208.040.2(2) and section 454.455.1, Grandmother, as the caretaker relative of the child via relinquishment of custody by Mother, was entitled to seek AFDC benefits from the State of Missouri and, upon doing so, *by operation of law*, the Division acquired the collection rights of the child support obligation set forth in the Dissolution Decree.

Points II and III are denied.[5]

## IV.

For his fourth and final point, Father asserts that the Division's claims are barred in whole or in part because the underlying support order is deemed satisfied in whole or in part by application of section 516.350. The Division responds that Father's payment of child support in March 1999 revived the child support judgment until March 2009; therefore, the presumption of payment did not bar the Division's withholding order issued in June 2007. We agree with the Division.

---

[5] The Division also argues that Father does not possess standing to challenge the validity of an assignment of his child support obligations, citing *State ex rel. Williams v. Williams*, 647 S.W.2d 590 (Mo. App. W.D. 1983). Given our ruling today, we need not and do not address the Division's alternative argument in defense of the propriety of the withholding order.

Section 516.350.2 provides that periodic payments of child support "shall be presumed paid and satisfied after the expiration of ten years from the date that periodic payment is due, unless the [child support] judgment has been otherwise revived as set out in [section 516.350.1]." In *Ferguson v. Ferguson*, 636 S.W.2d 323, 324 (Mo. banc 1982), the Missouri Supreme Court held that the ten-year period of limitation starts to run separately for each periodic child support payment when it is due.

Therefore, pursuant to section 516.350.1, each time Father failed to make a monthly child support payment after the entry of the Dissolution Decree in March 1984, a ten-year period of limitation for that particular payment obligation commenced. The period of limitation for each unpaid monthly child support obligation began to expire in March 1994. Further, the period of limitation as to all of the periodic child support obligations expired as of March 27, 2010, ten years after the final child support payment was due, when the child was emancipated[6] when she turned eighteen on March 27, 2000, *unless* the Dissolution Decree was revived pursuant to section 516.350.1.

The obligation to remit periodic child support payments ordered by a judgment, order, or decree may be revived by the obligor's payment on the judgment "duly entered upon the record thereof." § 516.350.1. "Thus, the ten year period of limitations for each unpaid periodic child support obligation will begin anew if . . . revival occurs before the original ten year period of limitations has expired." *Martin v. Martin*, 334 S.W.3d 741, 744-45 (Mo. App. W.D. 2011). It is not disputed that Father made a child support payment "duly entered upon the record" on March 17, 1999. That payment operated to revive the Dissolution Decree for all arrearages

---

[6] "Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child." § 452.370.4. "Unless the circumstances of the child manifestly dictate otherwise and the court specifically so provides, the obligation of a parent to make child support payments shall terminate when the child: . . . [r]eaches age eighteen . . . ." § 452.340.3(5).

remaining due within the ten-year period preceding the payment. Only child support installments that accrued prior to March 1989 would be barred by section 516.350.

Because Father's last payment was recorded on March 17, 1999, and served to revive the Dissolution Decree, the conclusive presumption of payment and satisfaction does not preclude an action for recovery of the child support awarded under the Dissolution Decree until after the expiration of ten years from the date that periodic payment was due, or March 17, 2009. *See* § 516.350.2. Because the Division issued the withholding order on June 4, 2007, it was timely to capture the child support arrearages from March 1989 to March 1999.

Point IV is denied.

## Conclusion

The Circuit Court's judgment, reversing the Division Director's Decision and vacating the Division's withholding order, is reversed. The Division Director's Decision and the corresponding withholding order shall be, and are, reinstated.

_____
Mark D. Pfeiffer, Judge

Thomas H. Newton, Presiding Judge,
and Cynthia L. Martin, Judge, concur.